[Cite as *State v. Ward*, 2017-Ohio-4381.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 15 BE 0077 |
| VS. | ) | |
| | ) | OPINION |
| BUCK ALLEN WARD | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:           Criminal Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 15 CR 135

JUDGMENT:                                            Affirmed.

APPEARANCES:
For Plaintiff-Appellee                              Attorney Daniel P. Fry
                                                              Belmont County Prosecutor
                                                              Attorney J. Flanagan
                                                              Assistant Prosecutor
                                                              147-A West Main Street
                                                              St. Clairsville, Ohio 49350

For Defendant-Appellant                        Attorney Brent Clyburn
                                                              604 Sixth Street
                                                              Moundsville, West Virginia 26041

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: June 15, 2017

DeGENARO, J.

{¶1} Defendant–Appellant, Buck Allen Ward appeals the judgment of the Belmont County Court of Common Pleas convicting him of one count of robbery and sentencing him accordingly. On appeal, Ward argues that he was denied his allocution rights during the sentencing hearing and that the trial court erred by imposing the maximum sentence. For the following reasons, Ward's assignments of error are meritless. Accordingly, the judgment of the trial court is affirmed.

{¶2} Ward was indicted on one count of aggravated robbery, R.C. 2911.01(A)(3), a first-degree felony, in connection with the robbery of a bartender. Pursuant to a Crim.R. 11 plea agreement, Ward pled guilty to an amended charge of third-degree felony robbery, R.C. 2911.02(A)(3); the State agreed to leave sentencing to the discretion of the trial court and to stand silent on a request for judicial release. Following a plea hearing, the trial court accepted Ward's plea as knowingly, voluntarily and intelligently made and continued sentencing so that a presentence investigation could be prepared.

{¶3} Following a sentencing hearing, the trial court imposed a maximum term of 36 months in prison, followed by up to three years of discretionary post-release control of up to three years. The trial court also ordered Ward to pay monetary restitution and gave him jail-time credit for 48 days.

## Sentencing Issues

{¶4} Both of Ward's assignments of error concern sentencing and therefore for clarity of analysis they will be discussed together. They assert, respectively:

The trial court erred in sentencing the defendant-appellant, Buck Allen Ward, to a maximum prison term of thirty-six (36) months following his conviction for the singular offense of "robbery," a felony of the third degree.

Furthermore, the trial court committed error denying the defendant-appellant, Buck Allen Ward, an unfettered opportunity to address the court prior to the imposition of sentence.

**{¶5}** Appellate courts review a felony sentence to determine whether the trial court's findings—or where findings are not required, the sentence itself—are clearly and convincingly unsupported by the record, or whether the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; ¶ 23.

**{¶6}** *Marcum* does not permit appellate courts to independently weigh the sentencing factors in R.C. 2929.12 on review. *State v. Davis*, 2016-Ohio-7319, --- N.E.3d---, ¶ 5 (7th Dist.), citing *State v. Ongert*, 8th Dist. No. 103208, 2016-Ohio-1543, ¶ 14. In other words, reversal or modification of a sentence in the wake of *Marcum*, "applies to situations in which not one sentencing factor supports a stated prison term or the trial court erroneously relied on factors that did not exist." *Davis* at ¶ 5, quoting *Ongert* at ¶ 13.

**{¶7}** Here, the trial court was not required to make any findings under the statutes referenced by R.C. 2953.08(G). Thus, Ward's sentence may be overturned only if that sentence was contrary to law or this court clearly and convincingly determines that the record does not support the sentence. *Marcum* at ¶ 23.

**{¶8}** Ward argues the trial court improperly sentenced him to the maximum term because the trial court mischaracterized some of his criminal history and relied upon the same in sentencing him. He argues that, prior to handing down a maximum prison term, the trial court appeared to treat offenses for which Ward had been charged but not convicted, or for which there was no clear disposition, as actual convictions. He notes that during the sentencing hearing the trial court read into the record approximately 20 crimes for which Ward had been charged but where, for a number of them, final disposition of the charge was unclear pursuant to the PSI. In addition, the trial court listed in the sentencing entry several West Virginia charges as convictions, when the disposition of those crimes in the PSI is listed as "Not Reported."

**{¶9}** Ward cites *State v. Collins*, 4th Dist. No. 03CA29, 2004-Ohio-3606, for his assertion that when a trial court specifically relies on inaccurate information at

sentencing, which, in turn, affects its findings and considerations, such may constitute error. However, *Collins* does not support reversal of Ward's sentence because in that case defense counsel brought the inaccuracies to the attention of the trial court at sentencing, and, further the appellate court found Collins had not demonstrated that the trial court specifically relied on the alleged inaccuracies, and thus were at most, harmless error. *Id.* at ¶ 23–¶ 24.

{¶10} This court recently had occasion to address a similar issue in *State v. Davis*, where the appellant, likewise relying on *Collins*, argued the trial court erred in sentencing him to the maximum term because it relied upon inaccurate information about his prior criminal history. This court found any error to be harmless:

> Here the trial court's slight mischaracterization of Davis' criminal record is also harmless. While three crimes were misstated, 21 others were accurately portrayed. Furthermore, in its sentencing entry, the trial court accurately related 19 crimes for which Davis had been convicted, including the two that had been misstated at sentencing. Finally, in its findings relative to the R.C. 2929.12(B) and (D) factors it considered before sentencing him to the maximum term, the trial court referenced several additional factors it considered prior to sentencing including the fact that Davis "has not responded to sanctions previously imposed" and that he "has an established pattern of criminal activity without 'good faith' treatment and/or an effort to change his lifestyle."

*State v. Davis*, --- N.E.3d ---, 2016-Ohio-7319, ¶ 8 (7th Dist.)

{¶11} Here, defense counsel did caution the trial court during sentencing—albeit before the court's recitation of the prior crimes—not to hold those crimes against Ward for sentencing purposes where there had been no actual convictions or where disposition was unknown. The trial court agreed:

> THE COURT: All right. Thank you. Mr. Myser? Mr. Myser, before

you start, I want to ask you what this court should do, which is what you're going to want to tell me, of course. But I want to read something to you, okay.

I want to read his record, and then you tell me what you think I should do with this case.

MR. MYSER: May I make a comment, Your Honor - -

THE COURT: Yes.

MR. MYSER: - - prior to reading?

THE COURT: Yes. Yes.

MR. MYSER: And that's one of the comments that I have to go through here. I have seen the PSI. I understand what's on his record. The only thing that I would ask for the Court to consider is to take into account his convictions; not necessarily cases that have been dismissed or cases that we don't know the disposition of, because the judicial system is setup under the, you know, premise that we are innocent until proven guilty.

Now, that being said - -

THE COURT: First of all, let me interrupt you. You are 100 percent right, and that's what I do do. [sic] However, I read it all, but bottom line is, I agree with you. Go ahead, sir.

MR. MYSER: That being said, I understand that convictions are plentiful. So you may proceed.

{¶12} The trial court was well aware that some of the crimes it recited did not result in convictions and accordingly did not consider that history in the same way in making its sentencing decision. Without considering those crimes for which disposition was unknown, Ward had a substantial history of prior felony convictions and the R.C. 2929.12 factors support a maximum sentence. In the sentencing entry, the trial court found pursuant to R.C. 2929.12(B) and (D) "Defendant has not responded to sanctions previously imposed; Defendant has an established pattern of

criminal activity without "good faith" treatment and/or an effort to change his lifestyle; and [t]he population of Belmont County was endangered by Defendant's conduct." Pursuant to R.C. 2929.12(C) and (E), the trial court found "no additional mitigating factors that exist which suggest that recidivism is less likely."

**{¶13}** Like in *Davis* and *Collins*, any inaccurate statements regarding Ward's criminal history made during sentencing were harmless error. Moreover, "[c]ourts have consistently held that evidence of other crimes, including crimes that never result in criminal charges being pursued, or criminal charges that are dismissed as a result of a plea bargain, may be considered at sentencing." *State v. Starkey*, 7th Dist. No. 06 MA 110, 2007-Ohio-6702, ¶ 17. Ward was originally charged with aggravated robbery, a first degree felony, and pled to robbery, a third degree felony.

**{¶14}** Ward also argues that his sentence was contrary to law in that the trial court impeded his allocution rights; specifically, because the trial court interrupted him while he was speaking. The common law right to allocution, codified in Crim.R. 32(A)(1), requires the following: "At the time of imposing sentence, the court shall do all of the following: * * * Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The rule imposes an affirmative duty on the trial court, with which the trial court must strictly comply. *State v. Campbell*, 90 Ohio St.3d 320, 324,738 N.E.2d 1178 (2000). "A defendant has an absolute right to allocution, which is not subject to waiver due to the defendant's failure to object, *Campbell* at 325-326, and applies to both felony and misdemeanor convictions." *State v. Wallace*, 7th Dist. No. 12 MA 180, 2013-Ohio-2871, ¶ 8, citing *Defiance v. Cannon*, 70 Ohio App.3d 821, 828, 592 N .E.2d 884 (3d Dist.1990). "The purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into consideration when determining the sentence to be imposed." *Id.*

**{¶15}** The trial court did address Ward specifically, asking if he had anything to say regarding the sentence, after defense counsel made arguments:

THE COURT: * * * Mr. Ward, anything you'd like to add, sir?

THE DEFENDANT: I'm really sorry for my actions.

THE COURT: Your actions now or your lifetime of actions?

THE DEFENDANT: All of it.

THE COURT: Okay go ahead.

THE DEFENDANT: I have never, ever got a charge I've never, ever got a charge unless I was under the influence of drugs or alcohol.

THE COURT: Say that again. "I never got a charge" - -

THE DEFENDANT: I have never, ever, ever got a charge unless I was under the influence

THE COURT: But if you're under the influence of alcohol, that gentlemen right next to you let me finish -- his family, me, all these other people, my family, are at risk of you. Correct?

THE DEFENDANT: Correct. It's not an excuse; it's just a fact.

THE COURT: Let me read this. Felonious assault; DUI; domestic battery; DUI; violation of home incarceration. Apparently, you were home incarcerated and you were drinking then, since what you told me you never violated anything unless you were drinking. So you're on home incarceration drinking. I don't know that; that's what you told me. Violation of a protective order; brandishing a deadly weapon; out-of-state fugitive; endangerment involved with a firearm; attempted burglary; cruelty to animals, on top of everything else; wanton endangerment; violation of a protective order; battery; battery; theft of a firearm; burglary; domestic battery; domestic battery; robbery. Now, let my keep going: That's amazing that I can keep going after all that, but I'm going to.

Here's the report: "While on pretrial supervision for this case," you think you'd be on the best of behavior, "defendant absconded and resisted arrest when confronted."

Let me go on. Ohio Risk Assessment summary. Mr. Myser, I don't put a lot of faith in these okay. So I do review them and study them, but for whatever it's worth, I'm going to add this, "Level of risk, very high for future crime." I have never seen that. I've never seen that. He has got to be one of highest I've ever seen for risk of re-offending. Is there anything else anybody would like to add?

**{¶16}** After the trial court posed that question, defense counsel proceeded to make additional arguments in mitigation of sentence. Then, the trial court asked: "Anything further from the State of Ohio or Mr. Ward?" The prosecutor responded that he did not have anything further, and Ward failed to respond; thus, the trial court proceeded to sentence Ward.

**{¶17}** Reading the sentencing transcript as a whole, Ward's right to allocution was not violated. The trial court did address Ward directly about whether he wished to make a statement regarding sentence. Although the trial court did interrupt Ward when he was making a statement, he gave Ward two other opportunities to speak before pronouncing sentence.

**{¶18}** In sum, Ward's sentence is not clearly and convincingly unsupported by the record or otherwise contrary to law. Therefore, both of Ward's assignments of error are meritless and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, P. J., concurs.